FILED
UNITED STATES DISTRICT COURT
LAS CRUCES, NEW MEXICO

SEP 10 2024

MITCHELL R. ELFERS
CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,                    )
                                             )
        Plaintiff,                           )     CRIMINAL NO. 24-CR-062-MIS
                                             )
vs.                                          )
                                             )
COREY PATRICK SAFFELL,                       )
                                             )
        Defendant.                           )

## PLEA AGREEMENT

Pursuant to Federal Rule of Criminal Procedure 11, the parties hereby notify the Court of the following agreement between the United States Attorney for the District of New Mexico, the defendant, **COREY PATRICK SAFFELL**, and the defendant's counsel, ANDRE POISSANT and GIA McGILLIVRAY:

## REPRESENTATION BY COUNSEL

1.    The defendant understands the defendant's right to be represented by an attorney and is so represented. The defendant has thoroughly reviewed all aspects of this case with the defendant's attorney and is fully satisfied with that attorney's legal representation.

## RIGHTS OF THE DEFENDANT

2.    The defendant further understands the following rights:

   a.    to plead not guilty;

   b.    to have a trial by jury;

   c.    to confront and cross-examine witnesses and to call witnesses to testify for the defense; and

   d.    against compelled self-incrimination.

## WAIVER OF RIGHTS AND PLEA OF GUILTY

3.      The defendant hereby agrees to waive these rights and to plead guilty to Count 1 of the Superseding Indictment, charging a violation of 18 U.S.C. § 242:  Deprivation of Rights; Unlawful Arrest; Count 3 of the Superseding Indictment charging a violation of 18 U.S.C. § 242: Deprivation of Rights; Failure to Intervene; and Count 4 of the Superseding Indictment, charging a violation of 18 U.S.C. § 242:  Deprivation of Rights; Deliberate Indifference to Serious Medical Needs.

## ELEMENTS OF THE OFFENSE

4.      If this matter proceeded to trial, the defendant understands that the United States would be required to prove, beyond a reasonable doubt, the following elements for Count 1, a violation of 18 U.S.C. § 242, Deprivation of Rights, Unlawful Arrest:

   a.      The defendant acted under color of law when he committed the acts charged in the Superseding Indictment;

   b.      The defendant violated John Doe's constitutional right to be free from an unreasonable seizure by arresting John Doe without probable cause;

   c.      The defendant acted willfully, that is, the defendant acted with a bad purpose, and;

   d.      The offense involved the use of a dangerous weapon.

5.      If this matter proceeded to trial, the defendant understands that the United States would be required to prove, beyond a reasonable doubt, the following elements for Count 3, a violation of 18 U.S.C. § 242, Deprivation of Rights, Failure to Intervene:

   a.      The defendant acted under color of law when he committed the acts charged in the Superseding Indictment;

   b.      Defendant Ceasar Enrique Mendoza deprived John Doe of the constitutional right to be free from the use of unreasonable force;

   c.      The defendant observed or otherwise knew that unreasonable force was being used against John Doe;

2

    d.    The defendant had the opportunity and means to intervene to stop the unreasonable force;

    e.    The defendant failed to take reasonable steps to do so;

    f.    The defendant acted willfully, that is, the defendant acted with a bad purpose, and;

    g.    The offense involved the use of a dangerous weapon.

6.    If this matter proceeded to trial, the defendant understands that the United States would be required to prove, beyond a reasonable doubt, the following elements for Count 4, for a violation of 18 U.S.C. § 242, Deprivation of Rights, Deliberate Indifference to Serious Medical Needs:

    a.    The defendant acted under color of law when he committed the acts charged in the Superseding Indictment;

    b.    The defendant violated John Doe's constitutional right to due process;

        1.  Specifically, John Doe had an objectively serious medical need, which, when unaddressed, exposed him to a substantial risk of serious harm;
        2.  The defendant knew that John Doe had a serious medical need; and

        3.  The defendant disregarded that medical need by failing to take reasonable measures to address it.

    c.    The defendant acted willfully, that is, the defendant acted with a bad purpose, and;

    d.    The offense involved the use of a dangerous weapon.

## SENTENCING

7.    The defendant understands that the minimum and maximum penalty the Court can impose for Count 1, 18 U.S.C. § 242, Deprivation of Rights, Unlawful Arrest, is:

    a.    imprisonment for a period of not more than 10 years;

    b.    a fine not to exceed $250,000.00;

    c.    a mandatory term of supervised release of not more than 3 years. (If the defendant serves a term of imprisonment, is then released on supervised release, and violates the conditions of supervised release, the defendant's

     supervised release could be revoked--even on the last day of the term--and the defendant could then be returned to another period of incarceration and a new term of supervised release);

    d. a mandatory special penalty assessment of $100.00;

    e. restitution as may be ordered by the Court.

  8. The defendant understands that the minimum and maximum penalty the Court can impose for Count 3, 18 U.S.C. § 242, Deprivation of Rights, Failure to Intervene, is:

    a. imprisonment for a period of not more than 10 years;

    b. a fine not to exceed $250,000.00;

    c. a mandatory term of supervised release of not more than 3 years. (If the defendant serves a term of imprisonment, is then released on supervised release, and violates the conditions of supervised release, the defendant's supervised release could be revoked--even on the last day of the term--and the defendant could then be returned to another period of incarceration and a new term of supervised release);

    d. a mandatory special penalty assessment of $100.00;

    e. restitution as may be ordered by the Court.

  9. The defendant understands that the minimum and maximum penalty the Court can impose for Count 4, 18 U.S.C. § 242, Deprivation of Rights, Deliberate Indifference to Serious Medical Needs, is:

    a. imprisonment for a period of not more than 10 years;

    b. a fine not to exceed $250,000.00;

    c. a mandatory term of supervised release of not more than 3 years. (If the defendant serves a term of imprisonment, is then released on supervised release, and violates the conditions of supervised release, the defendant's supervised release could be revoked--even on the last day of the term--and the defendant could then be returned to another period of incarceration and a new term of supervised release);

    d. a mandatory special penalty assessment of $100.00;

    e. restitution as may be ordered by the Court.

10.    The parties recognize that the Sentencing Guidelines are advisory, and that the Court is required to consider them in determining the sentence it imposes. Defendant further recognizes that while the defendant's attorney may have made a prediction or estimate of the sentence that the Court may impose, the defendant understands that the Court is not bound by any such estimate or prediction.

11.    The parties agree that, as part of the defendant's sentence, the Court will enter an order of restitution pursuant to the Mandatory Victim's Restitution Act, 18 U.S.C. § 3663A.

12.    It is expressly understood and agreed by and between the defendant and the United States that:

a.    The United States has made, and will make, NO AGREEMENT pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), that a specific sentence is the appropriate disposition of this case.

b.    The United States has made, and will make, NO AGREEMENT to approve, to oppose, or not to oppose pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), any request made by the defendant or on behalf of the defendant for a particular sentence in this case, other than the recommendations agreed to below.

c.    The United States hereby expressly reserves the right to make known to the United States Probation Office and to the Court, for inclusion in the presentence report prepared pursuant to Federal Rule of Criminal Procedure 32, any information that the United States believes may be helpful to the Court, including but not limited to information about any relevant conduct under USSG § 1B1.3.

d.    Except under circumstances where the Court, acting on its own, rejects this plea agreement, the defendant agrees that, upon the defendant's signing of this plea agreement, the

5

facts that the defendant has admitted under this plea agreement as set forth below, as well as any facts to which the defendant admits in open court at the defendant's plea hearing, shall be admissible against the defendant under Federal Rule of Evidence 801(d)(2)(A) in any subsequent proceeding, including a criminal trial, and the defendant expressly waives the defendant's rights under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 with regard to the facts the defendant admits in conjunction with this plea agreement. The Court has not acted on its own if its rejection of the plea agreement occurs after Defendant has expressly or implicitly suggested to the Court a desire or willingness to withdraw his or her plea or not to be bound by the terms of this plea agreement.

<u>DEFENDANT'S ADMISSION OF FACTS</u>

13.     By my signature on this plea agreement, I am acknowledging that I am pleading guilty because I am, in fact, guilty of the offense(s) to which I am pleading guilty.  I recognize and accept responsibility for my criminal conduct.  Moreover, in pleading guilty, I acknowledge that if I chose to go to trial instead of entering this plea, the United States could prove facts sufficient to establish my guilt of the offense(s) to which I am pleading guilty beyond a reasonable doubt, including any facts alleged in the Indictment that increase the statutory minimum or maximum penalties.  I specifically admit the following facts related to the charges against me, and declare under penalty of perjury that all of these facts are true and correct:

## Count 1: Unlawful Arrest

On or about July 30, 2021, I, Corey Patrick Saffell, was on duty as a police officer with the Jal Police Department in Jal, New Mexico, which is located in Lea County. At approximately 11:20 p.m., I saw a white Ford pick-up truck driving around the Pilot Gas Station with his lights off. I had previously observed the same truck pull up to a gas pump, but the truck did not get gas. I radioed into dispatch about a suspicious vehicle, and then I got behind the vehicle and initiated my emergency equipment lights signaling the driver to stop. I approached the driver's side window of the pick-up, identified myself, and told the driver, who is identified as John Doe in the superseding indictment, the reason why I stopped him. Specifically, I told John Doe he was acting weird and circling the parking lot. By the time I made contact with John Doe, my fellow Jal Police Officers Ceasar Enrique Mendoza and Robert Edward Embly (a.k.a. "Eddie") had already arrived on scene. I asked John Doe if he had his license with him. John Doe handed me a valid Texas Driver's license. I then asked John Doe to step out of the vehicle, and, after taking a minute, he complied. I had John Doe move away from his truck, and Officers Embly and Mendoza were both within a few feet of us and could observe my interactions with John Doe. I asked John Doe if he had been drinking anything, and he responded, "no sir." I patted John Doe down for weapons and did not find any. I asked John Doe what he was doing. I then left John Doe with Officers Embly and Mendoza and went inside the Pilot Gas Station. While inside, I handed the driver's license that John Doe had given me to people inside and asked them if any of them had seen John Doe before. One of the clerks said that another individual named Cory said that he comes into the Pilot quite a bit and that Cory has seen him a couple of times. I talked to another individual who called 911 because he thought John Doe was acting strange, and he also said that he had seen John Doe before.

I went back outside and continued talking to John Doe. I confronted John Doe about changing his story. I continued to question John Doe and then eventually told him that I thought John Doe was under the influence of something. I asked John Doe if he had taken anything. John Doe told me he had taken an aspirin. I then asked John Doe if he had anything in his truck, and he responded, "no." I asked him if I could have consent to search his truck. John Doe asked me if he was under arrest, and I responded that he was not under arrest. John Doe also told me there was nothing in his truck, and he never gave me verbal consent to search his truck. I then ran my drug detecting K9 around John Doe's truck, and my K9 alerted to the truck. I went back to John Doe, who had been with Officers Embly and Mendoza, and began reading him his *Miranda* rights from a card. John Doe again asked if he was under arrest, and I told him "no." I told John Doe that he was free to leave, but that his truck was coming with me and that I would be getting a search warrant for it. I then tried to figure out what John Doe's address was so I could send him a summons if something illegal was found in the truck. At that point, Officer Mendoza

7

and I had a side conversation during which Officer Mendoza told me he thought we should take John Doe in for a "detox" hold. I knew I could not take John Doe in for a detox hold as this is not authorized under New Mexico law in these circumstances. Specifically, John Doe would have needed to be taken to an authorized medical facility. I was frustrated that John Doe would not answer questions to my level of satisfaction. It was also clear to me that Officer Mendoza wanted to arrest John Doe.

I then looked at the Texas Driver's License that John Doe had presented me when I pulled him over. I went back up to John Doe and held his driver's license up to his face and proceeded to ask John Doe what his "real" name was. John Doe responded, "My real name is [John Doe's first name], [first name]." I handed the driver's license to Officer Embly, and he went along with me that the driver's license did not belong to John Doe. I then placed John Doe under arrest for concealing his identity. In the moment, I had noticed that there appeared to be a mole on the person in the driver's license and that John Doe appeared to weigh slightly less than the person in the picture. I recognize those observations in and of themself are not enough for a reasonable officer to assume that John Doe was not the person in the driver's license he had handed me. Indeed, I acknowledge that John Doe did look similar enough to the driver's license photo that minutes prior to this, I had gone into the Pilot Gas Station and asked people if they recognized the person in the driver's license photo, who was in fact John Doe. I acknowledge that John Doe was in fact the person in the driver's license. I acknowledge that if I had any doubt about John Doe's identity, the moment I began confronting John Doe about what his "real" name was, it was still obvious that I did not have probable cause to arrest John Doe for concealing his identity. Under New Mexico law, someone conceals their identity when they conceal one's true name or identity with intent to obstruct the due execution of the law, or with intent to intimidate, hinder or interrupt any public officer in a legal performance of his duties. I acknowledge that even if I had a subjective belief that John Doe might not be the person in the driver's license photo, a reasonable officer would have done more to verify that the driver's license did not in fact belong to John Doe. Moreover, even if the driver's license did not belong to John Doe, which I now acknowledge it did, I still did not have probable cause to arrest John Doe for concealing his identity because nothing about his behavior indicated he was attempting obstruct me, intimidate me, or interrupt me in the performance of my duties. I further acknowledge that it is not required that an individual be arrested for a petty misdemeanor, and it would be unusual to arrest someone for a petty misdemeanor.

Again, I did not have probable cause at that moment to believe John Doe had committed any violation of law for which I could arrest him. Even though I did not have probable cause to arrest John Doe for concealing his identity, or any other crime, I decided to arrest him anyway. Officer Mendoza and Officer Embly readily assisted me in unlawfully arresting John Doe by helping place

handcuffs on John Doe. I acknowledge that the driver's license John Doe provided me was his real driver's license, and he was not concealing his identity. I acknowledge that my actions, along with Officer Mendoza's and Officer Embly's actions, in arresting John Doe without probable cause violated John Doe's constitutional right to be free from an unreasonable seizure. I admit that my actions were willful, in that I acted with a bad purpose. I also acknowledge that as a result of John Doe's unlawful arrest, a taser, which is a dangerous weapon, was used on John Doe. Additionally, John Doe suffered bodily injury because the taser left numerous burn marks on his body.

## Count 3: Failure to Intervene

On or about July 30, 2021, I, Corey Patrick Saffell, was on duty as a police officer with the Jal Police Department in Jal, New Mexico, which is located in Lea County. At approximately 11:30 p.m., I began questioning an individual, who is identified as John Doe in the superseding indictment. I arrested John Doe for concealing his identity and my fellow police officers, Robert Edward Embly (*a.k.a.* "Eddie") and Ceasar Enrique Mendoza, were also on scene. I, along with my fellow officers, placed handcuffs on John Doe, so his hands were secured behind his back, and then myself and my fellow officers began trying to put John Doe into the back of my police unit. My police unit is a K9 unit with a split backseat, meaning the area we were attempting to place John Doe into was significantly smaller than the backseat of a normal police unit. Additionally, my K9 was in his cage in the other portion of the split backseat aggressively barking while we attempted to place John Doe in the backseat of my unit. John Doe was being passively resistant when we attempted to push him into the backseat of my unit. My co-defendant, Ceasar Enrique Mendoza, got out his taser, and began tasing John Doe, who responded by yelping in pain. I was standing next to Officer Mendoza and could clearly observe what was happening. I encouraged Officer Mendoza to continue tasing John Doe. Ultimately, I observed Officer Mendoza tase John Doe a total of 14 times while John Doe passively resisted, at most. I recognize that according to my training as a police officer and the Jal Police Department Police Manual, absent overly assaultive behavior by a subject, an officer should not use a taser if a subject is handcuffed. Here, John Doe was not being overtly assaultive to any of the officers on scene. John Doe was also not trying to flee. I was trained that before using force, an officer must consider whether the use of force would be objectively reasonable based on the *Graham* factors, which include (1) the severity of the alleged crime; (2) whether the subject poses an imminent threat to the safety of officers and/or others; and (3) whether the suspect is actively resisting or attempting to evade arrest by flight. I acknowledge I did not have probable cause to believe that John Doe had provided a false identification, but, even if he had, that is a petty misdemeanor in the state of New Mexico, and therefore, the least severe category of crimes. I acknowledge that John Doe did not pose a threat to the safety of myself or the other officers on scene.

John Doe was never aggressive nor assaultive toward officers in any way nor did he ever make any threats of violence toward myself or my fellow officers. I acknowledge that John Doe was not actively resisting, and he never attempted to flee or evade arrest. Therefore, under the *Graham* factors that I was trained to consider before ever using force and the totality of the circumstances, any use of force on John Doe was unwarranted, unjustified, and objectively unreasonable. The use of the taser on John Doe 14 times in drive stun mode in this circumstance was an unjustified and excessive use of force.

I was trained, and I was aware, that when I observe another officer using unjustified or excessive force, I have an affirmative duty to intervene on behalf of the citizen whose constitutional rights are being violated in my presence by other officers.

Once we placed John Doe in the back of Officer Embly's unit, contrary to the Jal Police Department Policy, we failed to secure him with a seat belt. I recognize that Officer Mendoza's use of the taser constituted using a dangerous weapon under the law. I further recognize that Officer Mendoza's use of the taser on John Doe, while he was handcuffed, violated John Doe's constitutional right to be free from unlawful excessive force. I acknowledge that John Doe suffered bodily injury as a result of the use of excessive force because he had burn marks on his body from being tased. I recognize that under the law, I had a duty to intervene when Officer Mendoza used unlawful excessive force against John Doe, and even though I had an opportunity to intervene, I failed to do so. I also admit that my actions were willful, in that I acted with a bad purpose.

## Count 4: Deliberate Indifference to a Serious Medical Need

On or about July 30, 2021, I, Corey Patrick Saffell, was on duty as a police officer with the Jal Police Department in Jal, New Mexico, which is located in Lea County. After Officer Mendoza, with my assistance and the assistance of Officer Embly, tased John Doe 14 times and put him into the back of Officer Embly's police unit, we shut the door and failed to check on John Doe. According to the Jal Policy Department Policy and Procedure Manual, officers are required to get medical attention for an individual who has been tased. Instead of calling for emergency medical care or taking John Doe to a hospital, he was left in the back of Officer Embly's unit for approximately 14 minutes completely unattended before he was then transported to the Jal Police Department. Neither myself nor my fellow officers checked on John Doe before we transported him to the Jal Police Department. It should have been obvious to me and Officers Embly and Mendoza that John Doe was in serious need of medical attention as he had just been tased 14 times. Rather than attend to his medical needs, Officer Embly, Officer Mendoza, and I were focused on securing John Doe's vehicle so that it could later be searched.

10

I have watched the video from Officer Embly's unit, and I observed that John Doe had a serious medical need at that time that was so obvious that even a person with no formal medical training would have recognized that medical care for John Doe was required. This is evidenced by the fact that you can see John Doe's head nod down several times, and you can also hear John Doe gasping, groaning, and making sounds clearly indicating he was in distress in the back seat. Once Officer Embly arrived at the Jal Police Department, I opened the car door to where John Doe was sitting. When I did so, it should have been so obvious that John Doe, who appeared unconscious or nearly unconscious, who had obviously urinated on himself, and who could not stand up on his own, was in serious need of medical attention. Rather than call for emergency medical services at that time, I and Officers Embly and Mendoza proceeded to drag John Doe, who was still handcuffed, into a holding cell and we placed him face down on the ground. During this time, Officer Mendoza pulled out his taser again, to threaten John Doe, who was not even conscious. A total of approximately 19 minutes elapsed from the last time John Doe was tased until emergency medical services were finally called. We had ample opportunity to call for emergency medical services during those 19 minutes, but we chose not to do so out of frustration with John Doe. Emergency medical services were not called while John Doe was clearly in extreme medical distress, rather we waited to call for emergency medical services until John Doe had no pulse. I recognize that I, along with my fellow officers, had a deliberate indifference to John Doe's obvious and serious medical needs and that our failure to get John Doe medical care violated his United States' constitutional right to due process. I further admit that my actions were willful, in that I acted with a bad purpose. Finally, I recognize that that the offense involved a dangerous weapon, namely a taser, because the taser was used on John Doe once he was in law enforcement's custody and the use of the taser is what required that we seek medical care for John Doe.

14. By signing this agreement, the Defendant admits that there is a factual basis for each element of the crime(s) to which the Defendant is pleading guilty and agrees to affirm the facts set forth above during the plea colloquy. The defendant agrees that the Court may rely on any of these facts, as well as facts in the presentence report, to determine the defendant's sentence, including, but not limited to, the advisory guideline offense level.

## RECOMMENDATIONS

15. Pursuant to Rule 11(c)(1)(B), the United States and the defendant recommend the following:

11

a.    Pursuant to USSG § 3E1.1(a), the defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for the defendant's criminal conduct.  Consequently, so long as the defendant continues to accept responsibility for the defendant's criminal conduct, the defendant is entitled to a reduction of two levels from the base offense level as calculated under the sentencing guidelines, and if applicable, of an additional one-level reduction pursuant to USSG § 3E1.1(b).  This reduction is contingent upon the defendant providing an appropriate oral or written statement to the United States probation officer who prepares the presentence report in this case in which the defendant clearly establishes the defendant's entitlement to this reduction.

b.    The defendant played neither an aggravating nor mitigating role in the offense.  Therefore, defendant's offense level should neither be increased nor decreased pursuant to USSG § 3B1.1 or § 3B1.2.

c.    Apart from the provisions in this plea agreement, the United States and the defendant reserve their rights to assert any position or argument with respect to the sentence to be imposed, including but not limited to the applicability of particular sentencing guidelines and adjustments under the guidelines.

16.    The defendant understands that the above recommendations are not binding on the Court and that whether the Court accepts these recommendations is a matter solely within the discretion of the Court after it has reviewed the presentence report.  Further, the defendant understands that the Court may choose to vary from the advisory guideline sentence.  If the Court does not accept any one or more of the above recommendations and reaches an advisory guideline sentence different than expected by the defendant, or if the Court varies from the advisory guideline range, the defendant will not seek to withdraw the defendant's plea of guilty.  In other

12

words, regardless of any recommendations of the parties, the defendant's final sentence is solely within the discretion of the Court.

## RESTITUTION

17. The defendant understands that restitution is this case is mandatory, pursuant to 18 U.S.C. § 3663A. The defendant understands that an unanticipated amount of a restitution order will not serve as grounds to withdraw the defendant's guilty plea. The defendant further agrees to comply with any restitution order entered into at the time of sentencing. The defendant further agrees that the defendant will not seek the discharge of any restitution obligation, in whole or in part, in any present or future bankruptcy proceeding. The defendant agrees to make full restitution for the provable losses caused by the defendant's activities. The defendant further agrees to grant the United States a wage assignment, liquidate assets, or complete any other tasks which will result in immediate payment in full, or payment in the shortest time in which full payment can be reasonably made as required under 18 U.S.C. § 3572(d).

18. The defendant further agrees to make full and accurate disclosure of his financial affairs to the United States. Specifically, the defendant agrees that, before sentencing, the defendant shall provide to the United States, under penalty of perjury, a financial statement which shall identify all assets owned or held directly or indirectly by the defendant. The defendant shall also identify all assets valued at more than $5,000 which have been transferred to third parties since July 30, 2021, including the location of the assets and the identity of any third party.

19. The parties will jointly recommend that as a condition of probation or supervised release, the defendant will notify the Financial Litigation Unit, United States Attorney's Office, of any interest in property obtained, directly or indirectly, including any interest obtained under any

13

other name, or entity, including a trust, partnership or corporation after the execution of this agreement until the fine or restitution is paid in full. *See* 18 U.S.C. § 3664(k), (n).

20.    The parties will also jointly recommend that as a condition of probation or supervised release, the defendant will notify the Financial Litigation Unit, United States Attorney's Office, before the defendant transfers any interest in property owned directly or indirectly by the defendant, including any interest held or owned under any other name or entity, including trusts, partnership and/or corporations. *See* 18 U.S.C. § 3664(k), (n).

21.    The defendant further agrees that whatever monetary penalties are imposed by the Court will be due immediately and will be subject to immediate enforcement by the United States as provided for in 18 U.S.C. § 3613. If the Court imposes a schedule of payments, the defendant understands that the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments.

DEFENDANT'S OBLIGATIONS

22.    The defendant understands the defendant's obligation to provide the United States Probation Office with truthful, accurate, and complete information, including, but not limited to defendant's true identity, citizenship status, and any prior criminal convictions. The defendant hereby represents that the defendant has complied with and will continue to comply with this obligation. The defendant understands that any misrepresentation with respect to the above obligations may be considered a breach of this plea agreement.

14

23.    The defendant agrees that any financial records and information provided by the defendant to the Probation Office, before or after sentencing, may be disclosed to the United States Attorney's Office for use in the collection of any unpaid financial obligation.

24.    By signing this plea agreement, the defendant waives the right to withdraw the defendant's plea of guilty pursuant to Federal Rule of Criminal Procedure 11(d) unless:  (1) the court rejects the plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(5) or (2) the defendant can show a fair and just reason as those terms are used in Rule 11(d)(2)(B) for requesting the withdrawal.  Furthermore, defendant understands that if the court rejects the plea agreement, whether or not defendant withdraws the guilty plea, the United States is relieved of any obligation it had under the agreement and defendant shall be subject to prosecution for any federal, state, or local crime(s) which this agreement otherwise anticipated would be dismissed or not prosecuted.

25.    The defendant will not willfully fail to appear for any court appearance in this matter.

26.    The defendant agrees not to engage in conduct that would constitute a new local, state, or federal crime.

27.    The defendant agrees not to engage in conduct that would constitute obstructing or impeding the administration of justice under USSG § 3C1.1.

<u>WAIVER OF APPEAL AND POST-CONVICTION RIGHTS</u>

28.    The defendant is aware that 28 U.S.C. § 1291 and 18 U.S.C. § 3742 afford the right to appeal a conviction and the sentence imposed.  Acknowledging that, the defendant knowingly waives the right to appeal the defendant's conviction(s) and any sentence, at or under the maximum statutory penalty authorized by law, as well as any order of restitution entered by the Court.  The defendant also waives the right to appeal any sentence imposed below or within the Guideline

range upon a revocation of supervised release in this cause number but may nonetheless appeal the determination of the revocation Guideline range. This waiver extends to any challenge to the manner in which the sentence was determined or imposed, including the district court's authority to make findings supporting the sentence. The defendant also waives the right to appeal the denial of any motion filed under 18 U.S.C. § 3582(c) where such denial rests upon the court's determination that a sentence reduction is not warranted under the factors set forth in 18 U.S.C. § 3553(a). In addition, the defendant agrees to waive any collateral attack to the defendant's conviction(s) and any sentence, pursuant to 28 U.S.C. §§ 2241, 2255, or any other extraordinary writ, except on the issue of defense counsel's ineffective assistance.

GOVERNMENT'S AGREEMENT

29.    Provided that the defendant fulfills the defendant's obligations as set out above, the United States agrees not to bring additional criminal charges against the defendant arising out of the facts forming the basis of the present Indictment.

30.    This agreement is limited to the United States Attorney's Office for the District of New Mexico and does not bind any other federal, state, or local agencies or prosecuting authorities.

VOLUNTARY PLEA

31.    The defendant agrees and represents that this plea of guilty is freely and voluntarily made and is not the result of force, threats or promises (other than the promises set forth in this plea agreement and any addenda). There have been no representations or promises from anyone as to what sentence the Court will impose.

16

## VIOLATION OF PLEA AGREEMENT

32.    The defendant agrees that if the Court finds by a preponderance of the evidence that the defendant has violated any provision of this agreement, the United States will be released from its obligations under the agreement.

33.    The defendant further agrees that in the event the Court finds that defendant has breached this plea agreement, thus releasing the United States of its obligations under the agreement, such events do not constitute a fair and just reason under Rule 11(d)(2)(B) for withdrawing the guilty plea(s) entered pursuant to this agreement.

34.    Following the Court's finding of a breach of this agreement by the defendant, should the United States choose to pursue any charge that was either dismissed or not filed as a result of this agreement, the defendant waives any defense to that charge or charges based on the lapse of time between the entry of this agreement and the Court's finding of a breach by the Defendant.

## SPECIAL ASSESSMENT

35.    At the time of sentencing, the defendant will tender a money order or certified check payable to the order of the United States District Court, District of New Mexico, 333 Lomas Boulevard, NW, Albuquerque, New Mexico 87102, in the amount of $300.00 in payment of the special penalty assessment described above.

## ENTIRETY OF AGREEMENT

36.    This document and any addenda are a complete statement of the agreement in this case and may not be altered unless done so in writing and signed by all parties. The parties agree and stipulate that this agreement will be considered part of the record of defendant's guilty plea

17

hearing as if the entire agreement had been read into the record of the proceeding. This agreement is effective upon signature by the defendant and an Assistant United States Attorney.

AGREED TO AND SIGNED this 28th day of August, 2024.

ALEXANDER M.M. UBALLEZ
United States Attorney

MATILDA McCARTHY VILLALOBOS
MARISA A. ONG
Assistant U.S. Attorneys
200 N. Church Street
Las Cruces, NM 88001
(575) 522-2304 – Tel.
(575) 522-2391 – Fax

This agreement has been read to me in the language I understand, and I have carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of the elements of the offense, of possible defenses, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of the relevant sentencing guidelines provisions, and of the consequences of entering into this agreement. No promises or inducements have been given to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

_____
COREY PATRICK SAFFELL
Defendant

I am the attorney for COREY PATRICK SAFFELL. I have carefully discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of the elements of the offense, of possible defenses, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of the relevant sentencing guidelines provisions, and of the consequences of entering into this agreement. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

_____
ANDRE POISSANT
GIA McGILLIVRAY
Attorneys for Defendant

19