IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

    vs.                                    No. CR 24-62 MIS

**COREY PATRICK SAFFELL**,
**CEASER ENRIQUE MENDOZA,**
**and ROBERT EDWARD EMBLY**

    Defendant.

## <u>UNITED STATES' RESPONSE TO DEFENDANT'S MOTION FOR A MISTRIAL</u>

THE UNITED STATES OF AMERICA hereby responds to Defendant Ceaser Enrique Mendoza's Motion for Mistrial. In the Motion, Defendant argues that a mistrial is warranted because (1) a juror accessed outside information during deliberations and passed that information on to fellow jurors, and (2) the same juror possessed a bias against law enforcement. The Court has set this matter for a hearing on August 4, 2026, and has denied Defendants' motions to continue sentencing currently set on August 6, 2026. As explained in more detail below, while the United States does not believe that Defendant has established that the juror possessed an actual or implied bias against law enforcement, the United States is hesitant to conclude that the issues surrounding the alleged introduction of extraneous information before the jury could be resolved prior to the August 4, 2026, hearing or the current sentencing date. If it is ultimately established that extraneous information was placed before the jury, the United States is admittedly concerned that certain evidentiary rulings at trial (on the Government's motion) would inhibit its ability to rebut the presumption of prejudice that arises in such circumstances.

Apart from those concerns, however, after a review of this case by its Appellate Division,

the U.S. Attorney's Office believes that the interests of justice require that a new trial on all counts should be granted to Defendants Embly and Mendoza, but for reasons other than those set forth in Defendants' present motion. This is not acknowledged lightly. John Doe's death was unequivocally tragic and the Government's decision on this point is not a ratification of any actions taken by Defendants that fateful evening. But the Government must acknowledge when it has erred. Proceeding to sentencing when the Government has significant concerns regarding the viability of the convictions on appeal risks compounding its error. For these reasons, without conceding the substance of Defendant's motion absent further development of the record, the Government nevertheless does not oppose the relief requested by Defendant.

The Government understands the uniqueness of its position on Defendant's Motion. But Federal Rule of Criminal Procedure 33 does not appear to authorize it to file a motion for a new trial itself. The Government is authorized to move for dismissal under Rule 48(a) but views this procedure as a less drastic form of relief. It would stand to reason that if the Government may move for dismissal under Rule 48(a), it is not precluded from agreeing to a lesser form of requested relief, even if on different reasoning than that proposed by a defendant's motion. Should the Court disagree, the Government will consider its options but submits that it is hesitant to proceed to sentencing in light of the issues noted below.

## I.    ARGUMENT

The Government will first address the substance of Defendant's Motion. While the Government contends that Defendant has failed to proffer sufficient facts indicating a juror possessed actual or implied bias against Defendants, or even law enforcement generally, the Government does have concerns regarding the possibility of extraneous information being placed before the jury. While the Government believes it would need additional time to develop the record

beyond what it is currently being allotted, the Government's ultimate concern rests with the preclusion of evidence related to John Doe's drug use and cause of death. As will be explained in more detail below, this is particularly an issue where the Government proffered less probative justifications for John Doe's behavior and ultimately implied the taser caused his death.

### A. Defendant's motion for mistrial on the basis of extraneous information

As an initial matter, Defendant's contention that Juror #1 was biased does not warrant a mistrial.

There are two types of juror bias: actual and implied. *United States v. Dermen*, 143 F.4th 1148, 1172 (10th Cir. 2025). Actual bias is "a genuine prejudice that a juror has against some person or relevant subject." *Id.* It can be established by an express admission or by "proof of specific facts which show the juror has such a close connection to the facts at trial that bias is presumed." *Id.* at 1173. On the other hand, implied bias is one that the law "presumes because of kinship or some other incurably close relationship" or "that is inferred from the experiences or relationships of a juror." *Id.* (internal alterations omitted). Implied bias "should not be invoked lightly." *Id.* "Situations that would support a finding of implied bias might include revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction." *Id.* Actual bias is a factual question while implied bias is a legal question. *Id.*

Based on the high standard for implied bias, the factual situation described in the affidavit falls far short of the situations noted above that indicate an implied bias. As to actual bias, the United States understands the offending statements to be post-verdict statements regarding justice being served and a request to assist in getting people off death row. The United States submits that

neither of these statements are sufficient to indicate a disqualifying bias against the Defendants or even law enforcement more generally. For these reasons, the United States does not believe that allegations of implied or actual bias in the affidavit warrant a mistrial.

Turning to the matter of extraneous information being placed before the jury, Federal Rule of Evidence 606(b) precludes juror testimony regarding "any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror or another juror's vote; or any juror's mental processes concerning the verdict or indictment." However, a juror may testify regarding whether "extraneous prejudicial information was improperly brought to the jury's attention." *Id.* In the post-verdict context, the court is limited to "an objective inquiry into the nature and circumstances of the juror's exposure to the extraneous information to assess its prejudicial effect." *United States v. Daniels*, 755 Fed. App'x. 796, 802 (10th Cir. 2018) (unpublished).

"A rebuttable presumption of prejudice arises whenever a jury is exposed to external information in contravention of a district court's instructions." *United States v. Davis*, 60 F.3d 1479, 1484-85 (10th Cir. 1995) (internal quotation marks omitted). "When a jury or juror is exposed to external information, the government has the burden to prove the misconduct harmless beyond a reasonable doubt." *United States v. Smith*, 135 F.4th 905, 916 (10th Cir. 2025). Due process does not require a new trial anytime there is some evidence of extraneous information being presented to the jury. *United States v. Hornung*, 848 F.2d 1040, 1045 (10th Cir. 1988). Rather, "when a trial court is apprised of the fact that an extrinsic influence may have tainted the trial, the proper remedy is a hearing to determine the circumstances of the improper contact and the extent of the prejudice, if any, to the defendant." *Id.*

According to the affidavit attached to Defendant's motion, a juror (Juror #10) avers that contrary to the Court's instructions, the jurors deliberated regarding whether Defendants killed John

4

Doe with the taser. Pursuant to that discussion, Juror #10 avers that a separate juror (Juror #1) encouraged him to look into the lethality of tasers and admitted that he had reviewed the taser manufacturer's website in support of his contention that John Doe's death was the result of the taser. The affidavit implies this conversation took place during jury deliberations. Defendant's Motion and affidavit accordingly indicate that extraneous information was provided to the jury.

But this alone does not warrant a new trial. *See Hornung*, 848 F.2d at 1045. Rather, in line with *Hornung*, the United States acknowledges that the proper course of action is an evidentiary hearing. *Id.* The United States is aware that the Court has set this matter for a hearing on August 4, 2026. Doc. 293.   However, the United States is concerned that the Court's denial of the motion to continue sentencing will not allow for sufficient time to resolve the issues presented. *See* Doc. 299 (denying motion to continue sentencing).

More specifically, to appropriately address the issue, the Government would need to obtain either the testimony or affidavit of Juror #1 and likely at least one other juror to confirm or dispel the affidavit. If confirmed, the United States would need additional time to assess the prejudice flowing from this extraneous information. *See id.* (stating that prejudice is assessed by "reviewing the entire record, analyzing the substance of the extrinsic evidence, and comparing it to that information of which the jurors were properly aware."). As it stands now, based on the Government's review of the record, had testimony regarding the lethality of tasers—specifically in "drive stun" mode—been presented to the jury, the prejudice would likely be harmless. But that information was specifically excluded from the trial testimony on the Government's motion. Vol IV at 5-7. Nevertheless, the Government acknowledges that in closing argument it invited the jury to review warnings on the taser that indicated it "can cause death or serious bodily injury" in order to prove it was a dangerous weapon. Transcript, VII at 119. Further, despite moving to preclude

5

evidence of John Doe's cause of death, the Government further argued in relation to the deliberate indifference count that Defendants should have been aware John Doe was suffering a serious medical episode (that ultimately killed him) because they had tased him fourteen times. *Id.* at 122-124. This argument can reasonably be construed to imply to the jury that the taser caused John Doe's death when the Government was aware that was not the case.[1] The United States is accordingly concerned that it would not be able to rebut the presumption of prejudice given that the United States plausibly implied John Doe's death was caused by the taser while simultaneously precluding evidence to the contrary.

### B. The Government does not oppose Defendant's request for a mistrial

While the Government has legitimate concerns that prejudicial extraneous evidence was put before the jury, the Government's larger concern is the appellate viability of these convictions. As explained below, the Government's decision to seek preclusion of John Doe's drug use and cause of death while simultaneously contesting that he was resisting and suggesting that his medical episode was caused by the tasing is highly likely to result in the reversal of these convictions. The Government accordingly submits that a new trial, absent these deficiencies, is warranted in the interest of justice.

### i. Counts 1 and 2

As the Court will recall, before trial the Government moved for an order that all evidence of John Doe's methamphetamine use, and all evidence of the cause of his death, including testimony

---

1 To be sure, the intention of the Government's argument on this point was likely directed to the point that anybody tased fourteen times should be medically checked. But having successfully precluded John Doe's methamphetamine use and cause of death, the Government should have exercised greater caution to avoid the insinuation that John Doe's medical episode, and therefore his death, were caused by the officers' actions in tasing him.

by the medical examiner, Dr. Krinsky, should be excluded from the trial of this case. Dr. Krinsky's opinion, as expressed in her report, was that the officers' Taser use did not cause John Doe's death, and that he instead died as the result of an overdose of methamphetamine. The parties argued the issue at length, and this Court granted the motion.

The Government now believes that in so arguing, it induced this Court to commit an abuse of discretion that deprived Defendants of a fair trial. As a result, the exclusion order is unlikely to survive appellate review.

Federal Rule of Evidence 403 provides that "[a] court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Excluding testimony or evidence on Rule 403 grounds is "an extraordinary remedy [that] should be used sparingly." *United States v. Watson*, 766 F.3d 1219, 1241 (10th Cir. 2014).

As this Court correctly recognized, *see* Doc. 226 at 8, John Doe's methamphetamine use was relevant on the issue of whether the officers' use of force was unreasonable. If John Doe was high on methamphetamine, that would tend to make it more likely that he was acting erratically, irrationally, and was resisting arrest. And that would be relevant under *Graham v. Connor*, 490 U.S. 386 (1989), in which the Supreme Court held that whether a defendant is actively resisting or not is one of the principal factors to be used in determining whether a police officer used excessive force. This Court—at the Government's urging—excluded evidence of Doe's methamphetamine use on Rule 403 grounds, finding that the probative value of his methamphetamine use was reduced by the existence of the officers' lapel camera videos and because there was insufficient evidence that Doe was actually impaired by it. Doc. 226. The Government also suggested that the evidence was

irrelevant because Defendants were not aware that Doe had ingested a significant quantity of methamphetamine (although they suspected he might be intoxicated), based on the principle that the reasonableness of a use of force should be evaluated in light of the circumstances of which officers were aware at the time. The Court also ruled—again at the Government's urging—that the probative value was substantially outweighed by the danger of unfair prejudice, *i.e.*, that the jury might think John Doe was a bad person or deserved what happened to him. Doc. 226.

The Government believes that it did not properly evaluate the probative value or relevance of the evidence. The officers' lapel cameras, while reflecting that Defendants and Officer Saffell repeatedly told John Doe to stop resisting, do not clearly show whether John Doe was resisting or not, or to what extent he was doing so, and this was a strongly disputed issue at trial. As for whether Doe was impaired, the Government believes a reasonable jury could infer that he was likely impaired by the drug during the 45-49 minute period immediately preceding his death, based on both the strange behavior he exhibited before his arrest and his ingestion of a quantity of methamphetamine sufficient to *kill* him by the end of that period. And while it is true that overall reasonableness of police officers' decision to use force is evaluated in light of the circumstances known to them at the time, evidence that an arrestee was intoxicated is nevertheless relevant to an excessive-force claim to show how the individual interacted with police officers and whether their use of force was reasonable. *See*, *e.g.*, *Palmquist v. Selvik*, 111 F.3d 1332, 1342 (7th Cir. 2011) (evidence of an arrestee's intoxication is admissible under Rule 403 in excessive-force case because it "tends to make more probable that the [arrestee] acted as the [police officer] contended he did….").

More importantly, the Government's own evidence and arguments during the trial *increased* the probative value of John Doe's methamphetamine use. Although the Government's only

eyewitness, Officer Corey Saffell, testified that Doe resisted the officers' efforts to get him into the police vehicles during his arrest, the Government also repeatedly argued and suggested that Doe was not actually impaired and was not resisting arrest. The Government elicited opinion testimony from an FBI agent that he did not think Doe was resisting, Tr., Vol. III, at 75-76, and that Doe's odd behavior might have been the result of a diabetic or epileptic episode, rather than intoxication. *Id.* at 114-15. When asked about the officers' statements (recorded on their cameras) telling Doe to stop resisting, the same agent agreed that it's possible that officers who know their statements are being recorded "could say things just because they want those words to show up on the recording[,]" *Id.* at 152, the implication being that Defendants were urging Doe to stop resisting although they knew he was not doing so, in order to create the false impression that he was. The Government elicited testimony from another FBI agent that while John Doe may have seemed impaired, he might have just been tired after a long day in the oil fields. (240-41). Thus, having shielded the jury from the most probative rationale for Doe's conduct, the Government nevertheless elicited various sympathetic justifications for his behavior, thereby putting his true condition directly at issue.

Further, in closing argument, the prosecutors argued that Doe was not intentionally resisting, but rather that Defendants made it difficult for Doe to enter the vehicle by pushing him, *see* Transcript, Vol. VII, at 63-64, 69; that Doe could not get his leg into the vehicle, *id.* at 68; that he was merely confused, *id.* at 70; and that he might not have been able to get into the vehicle because his hands were cuffed behind his back, *id.* at 69-70. In rebuttal, the Government again argued that Doe was unable to get into the police vehicle and said that Defendants wanted to punish him because they were frustrated by his refusal to consent to a search of his truck. *Id.* at 220-23.

By presenting testimony and argument that Doe was not resisting arrest, the Government emphasized the importance of the question of resistance to the jury's resolution of the excessive-

force charge against Officer Mendoza and the failure-to-intervene charge against Officer Embly. Evidence that Doe was intoxicated with methamphetamine had high probative value on that issue, because if the jury believed that he was impaired, it could also have believed that it was more likely that he was acting irrationally and resisting arrest, and it would have had a different explanation of why three officers had difficulty subduing him. *See*, *e.g.*, Tr., Vol. III, at 117 (FBI agent agreed that a person under the influence of narcotics "can often be stronger or have more strength than the average person"). At the very least, the jury should have been allowed to resolve the question of whether Doe was resisting with knowledge of all the relevant facts.

The Government acknowledges, as this Court found, that the evidence of Doe's use of illegal drugs does present some danger of unfair prejudice, but it does not believe that such danger substantially outweighs its probative value on the question of Doe's resistance, given the prosecution's efforts at trial to persuade the jury that Doe was not resisting arrest.

In sum, the Government now believes that the exclusion of the evidence of Doe's methamphetamine use casts grave doubt regarding the fairness of the trial on Count 1 (excessive force against Mendoza) and Count 2 (failure-to-intervene against Embly). The Government believes a new trial on those counts is warranted in the interests of justice, and it has no desire to defend those convictions on appeal in light of the facts set forth above.

*ii.*    **Count 3**

Count 3 charged both Mendoza and Embly with deliberate indifference to Doe's serious medical need. The Government believes that they did not receive a fair trial on this charge either due to the exclusion of evidence that a methamphetamine overdose caused Doe's death combined with arguments made by the prosecution.

This Court gave a strongly worded limiting instruction to the jury that Defendants were not

10

charged with causing Doe's death, that the Government was not alleging that the tasings caused Doe to die, that the jury should not infer guilt on Count 3 from the fact that Doe died, and that Doe's death was entirely irrelevant to the jury's decision and should not be considered. Transcript, Vol. VII, at 139-140.

But unfortunately, the effect of this limiting instruction was undermined by the Government's own closing and rebuttal arguments. Although the Government presented no evidence that the tasing caused or contributed to Doe's serious medical condition or his resulting death, the Government's arguments suggested that such a causal connection existed. In closing, the prosecutor argued that a reasonable person would think that Doe was experiencing a serious medical need because he had been tased 14 times. *See* Transcript, Vol. VII at 121-22. The Government also argued that the officers intentionally delayed medical care by not calling EMS immediately after tasing him 14 times. *Id.* at 126. And it argued that Embly and Mendoza had been trained that multiple Taser uses require medical attention. *Id.* at 127-29. In rebuttal, and in response to a defense argument that the officers didn't realize that Doe's condition was grave and probably thought that he was intoxicated and was just sleeping it off, the Government argued that unlike ordinary people who are intoxicated, Doe had been tased 14 times. *Id.* at 225-26.

These arguments suggested to the jury that the tasing caused or contributed to Doe's serious medical condition and resulting death, despite this Court's instruction and the lack of any evidence of a causal connection between the tasing and Doe's condition. This was prejudicial given that the jury did not hear the evidence that Doe used methamphetamine nor that the medical examiner had determined that he died of an overdose of that drug. Although Defendants did not object to these arguments, the Government's "interest … in a criminal prosecution is not that it shall win a case, but that justice be done." *Berger v. United States*, 295 U.S. 78, 88 (1935).

11

Although this Court gave a strong limiting instruction, and the presumption is that jurors follow their instructions, the Government does not wish to rely on that presumption here. Given the issues described above, the Government lacks confidence that the trial on Count 3 was a fair one, and it therefore believes that Defendants should receive a new trial on it as well.

The Government does not intend to suggest that it believes Defendants' conduct was proper. As the Court will recall, there was substantial evidence that Defendants disregarded their training in their interactions with Doe. But the Government believes it was a mistake to urge the exclusion of evidence of Doe's drug use or cause of death because it caused the jury not to have a full picture of what occurred and deprived Defendants of a fair trial.

## II.    CONCLUSION

For the reasons explained above, the Government retains significant concerns regarding the appellate viability of these convictions. The United States accordingly does not oppose Defendant's request that the Court declare a mistrial.

Respectfully submitted,

TODD BLANCHE
Acting Attorney General
RYAN ELLISON
First Assistant United States Attorney

*__Electronically filed on 7/27/2026__*
MARIA Y. ARMIJO
Assistant United States Attorney
200 N. Church Street
Las Cruces, New Mexico 88001
(575) 323-5290

12

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send electronic notification to defense counsel of record on this date.

/s/
MARIA Y. ARMIJO
Assistant United States Attorney

13